J. D. Ledbetter v. Commissioner.
Ledbetter v. Commissioner
Docket No. 8143.
United States Tax Court
1953 Tax Ct. Memo LEXIS 317; 12 T.C.M. (CCH) 354; T.C.M. (RIA) 53105; March 31, 1953
*317 Petitioner, a sawmill owner and operator, kept practically no books or records. Respondent increased sales, decreased purchases, and made other adjustments to which petitioner agrees. 1. Held, petitioner has failed to prove his labor expenses were greater than those claimed in his returns and allowed by respondent; 2. Held, further, petitioner understated his taxable net income for 1942 and 1943 with intent to evade tax so that the 50 per cent fraud penalty applies to each year; and 3. Held, further, a 10 per cent penalty for failure to file a declaration of estimated tax for 1943 and a 6 per cent penalty for substantial underestimation of tax for 1943 are applicable. James B. Estes, Jr., Esq., for the petitioner. Thomas C. Cravens, Jr., Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion The respondent determined deficiencies and penalties for the taxable years 1942 and 1943 as follows: 50%
10%
6%
Year
Tax
Deficiency
Penalty
Penalty
Penalty
1942
Income
$6,271.65
$3,135.82
1943
Income and Victory
2,017.36
1,008.68
$201.74
$121.04
The questions to be decided are: (1) whether petitioner *318 is entitled to a deduction for "labor-sawmill" expenses for the years 1942 and 1943 in excess of the amounts claimed in his returns and allowed by respondent for those years; (2) whether the petitioner is liable for a 50 per cent fraud penalty for the years 1942 and 1943; (3) whether petitioner is liable for a 10 per cent penalty for failure to file a declaration of estimated tax for the year 1943; and (4) whether the petitioner is liable for a 6 per cent penalty for substantial underestimation of tax for the year 1943. Findings of Fact Petitioner is an individual residing at Willacoochee, Georgia. He filed his income tax return for 1942 and his income and victory tax return for 1943 with the collector of internal revenue for the district of Georgia. During the taxable years, petitioner was a sawmill operator in Willacoochee, owning and operating the Ledbetter Lumber Company. Agents of the respondent began an investigation of petitioner's income tax liabilities for 1942 and 1943 in October 1944. Petitioner's records were meager, consisting solely of a large box in which he had placed numerous papers relating to the operation of his business. He turned this box over to respondent's *319 agents during the investigation. Petitioner's net profits for the years 1942 and 1943, as disclosed by his returns and as corrected by respondent, are as follows: 1942
Disclosed
Increase
Decrease
by Return
Corrected
in Income
in Income
Sales: Timber
$107,247.31
$114,477.39
$ 7,230.08
Merchandise
0
2,364.35
2,364.35
Total
$107,247.31
$116,841.74
Cost of Lumber and Timber: Inventory, Beginning: Lumber
0
$ 1,500.00
Timber
0
6,000.00
Total
0
$ 7,500.00
Purchases: Logs
0
$ 1,185.59
Timber
$ 39,550.00
33,240.75
Total
$ 39,550.00
$ 34,426.34
Sum of above totals
$ 39,550.00
$ 41,926.34
Less: Inventory, End: Lumber
0
$ 3,200.00
Timber
0
5,766.67
Total
0
$ 8,966.67
Cost of Goods Sold
$ 39,550.00
$ 32,959.67
$ 6,590.33
Gross Profit
$ 67,697.31
$ 83,882.07
Less: Expenses: Labor - Sawmill
$ 24,078.61
$ 24,078.61
Labor - Contract Sawmills
28,286.25
23,347.32
4,938.93
Other Labor
651.50
651.50
Truck Repairs
618.40
Tractor Repairs
518.62
1,137.94
$ .92
Mill & Office Supplies
3,808.62
3,489.44
319.18
Gas, oil & fuel oil
6,071.32
6,151.32
80.00
Fire Insurance
330.00
330.00
Interest Paid
1,293.33
993.33
300.00
Feed
138.40
111.31
27.09
Taxes
0
589.67
589.67
Auto Tags & Use Stamps
55.00
55.00
Telephone & Telegraph
0
260.00
260.00
Depreciation
0
2,253.84
2,253.84
Error in Addition
( .20)
.20
Total Deductions
$ 65,849.85
$ 63,449.28
Net Profit
$ 1,847.46
$ 20,432.79
$21,769.96
$3,184.63
3,184.63
Net increase in income
$18,585.33
1943
Sales: Timber
$ 98,649.98
$102,437.77
$ 3,787.99
Merchandise
0
0
Total
$ 98,649.98
$102,437.77
Cost of Lumber and Timber: Inventory, Beginning: Lumber
0
$ 3,200.00
Timber
0
5,766.67
Total
0
$ 8,966.67
Purchases: Logs
$ 2,205.07
$ 2,090.48
Timber
14,818.95
8,112.45
Total
$ 17,024.02
$ 10,202.93
Sum of above totals
$ 17,024.02
$ 19,169.60
Less: Inventory, End: Lumber
0
$ 2,850.00
Timber
0
3,228.11
Total
0
$ 6,078.11
Cost of Goods Sold
$ 17,024.02
$ 13,091.49
$ 3,932.53
Gross Profit
$ 81,625.96
$ 89,346.28
Less: Expenses: Labor - Sawmill
$ 35,150.10
$ 36,004.17
$ 854.07
Labor - Contract Sawmills
18,637.34
18,366.54
270.80
Other Labor
683.65
547.42
136.23
Truck Repairs
7,908.84
Tractor Repairs
1,823.06
7,654.22
2,077.68
Mill and Office Supplies
4,419.85
4,376.75
43.10
Gas, Oil and Fuel Oil
6,051.14
6,153.36
102.22
Fire Insurance
150.00
190.00
40.00
Interest Paid
1,200.00
302.89
897.11
Feed
3,479.68
2,304.11
1,175.57
Freight and Express
1,538.46
67.51
1,470.95
Taxes
172.28
172.28
Auto Tags and Use Stamps
55.00
55.00
Telephone and Telegraph
260.00
260.00
Depreciation
2,995.24
2,995.24
Loss
95.63
95.63
Total Deductions
$ 81,042.12
$ 79,545.12
Net Profit
$ 583.84
$ 9,801.16
$13,791.76
$4,574.44
4,574.44
Net Increase in Income
$ 9,217.32
*320 The Georgia unemployment compensation tax returns, filed by petitioner for the taxable years, show total wages paid for 1942 and 1943 in the amounts of $24,566.31 and $35,362.95, respectively. In addition, petitioner was required to pay $854.07 for the year 1943 by the Wages and Hours Division of the Department of Labor. Petitioner had no books and records to establish any increase in his "labor-sawmill" expense for the taxable years. At the hearing, some witnesses testified as to approximate amounts which they received from petitioner during such years for services rendered in those years. The names of some of these individuals did not appear in the unemployment compensation tax returns and those that did so appear showed wages of much lower amounts than those they testified to receiving. The following table sets forth a summary of such testimony for the taxable years, giving the approximate amounts these persons testified they received during the taxable years and the amount which appeared in the Georgia unemployment compensation tax returns for those years: 1942
1943
Unem.
Unem.
Comp.
Comp.
Name
Weeks Rate
Amount
Return
Weeks Rate
Amount
Return
J. W. Daughaty
45 at $50
$ 2,250
32 at $50
$1,600
J. C. Gibbs
1,700
$ 8.40
400
$ 126.20
Clarence Jewell
39 at 30
1,170
15.90
8 at 30
240
George W. Little
47 at 20
940
180.00
15 at 20
300
80.00
Walter Vickers
52 at 25
1,300
350.00
52 at 25
1,300
773.92
Samuel L. Davis
26 at 35
910
Henry D. Powell
34 at 22
748
33.95
30 at 22
660
Lott Powell
13 at 12
156
25 at 12
300
226.20
Isom Powell
52 at 14
728
65.45
34 at 14
476
Tom Powell
52 at 20
1,040
5.60
30 at 20
600
Ruben Jewell
30 at 35
1,050
Elmer Powell
32 at 22
704
Willie Harper
6 at 22
132
32 at 22
704
99.20
Totals
$12,828
$659.30
$6,580
$1,305.52
*321 Petitioner had certain persons working for him on a subcontract basis during 1942 and 1943. At least some of the labor expenses of the subcontractors were paid directly by petitioner, and were claimed as a deduction in his income tax returns, under the heading "labor-contract sawmills." When respondent's agents began to investigate petitioner's returns for the taxable years, petitioner informed them that he had made all his sales to one company. Subsequent examination by the agents disclosed that for 1942 petitioner had also sold lumber to a second company, and in 1943 to several other companies. The information as to sales for 1943 was obtained by checking the railway records of shipments of lumber by petitioner to such purchasers, and thereby discovering the names and amounts. Petitioner was not very cooperative with the agents when it came to determining sales which he had made, but was most cooperative with the agents when they worked on his deductible expenses for the taxable years. Petitioner understated his taxable net income for the years 1942 and 1943. Such understatements were made by petitioner with an intent to evade payment of income taxes. There was no reasonable *322 cause for petitioner's failure to file an estimated declaration for the year 1943; and his corrected income tax for that year exceeded his estimated tax by more than 80 per cent. His "labor-sawmill" expenses for the years 1942 and 1943 were in the amounts of $24,566.31 and $36,217.02, respectively. Opinion RICE, Judge: Petitioner agrees that the adjustments made by respondent in his taxable net income for the years here in question are correct. However, he claims that, in his tax returns for such years, he did not deduct the proper amounts for his "labor-sawmill" expenses for each of these years, and that such deductions should be increased by the amounts of $10,837.33 for 1942 and $18,450.88 for 1943. He maintains that timesheet records of a number of his employees for such years were misplaced, and amounts paid them were not included in the Georgia unemployment compensation reports, or deducted in his Federal income tax returns for these years. Thirteen witnesses appeared for petitioner at the trial and testified that they had worked for him during these years. They also testified as to the approximate amounts they had received, and the approximate periods which they had worked. *323 Petitioner also testified that there were another 12 to 15 persons whom he was unable to get to testify. We have no reason to doubt the testimony of all of these witnesses; however, we feel the petitioner has failed to prove that the amounts paid them were not included in his returns for the taxable years under some deduction other than "laborsawmills." One of the items claimed by petitioner in such returns was "labor-contract sawmills," and amounted to $28,286.25 in 1942 and $18,637.34 in 1943. Respondent decreased such amounts by $4,938.93 for 1942 and $270.80 for 1943. If petitioner were correct in his claims, he would have shown a net profit for 1942 in the amount of approximately $8,000, and a loss in 1943 of about $9,000. Petitioner claims that he discovered the failure to take such deductions approximately two and one-half years prior to the hearing in this case. He did not inform respondent of such claim until several days before the trial. Respondent's agent testified that the amounts allowed by respondent, in his deficiency notice, for "labor-sawmill" expenses were those reported by petitioner in his Georgia unemployment compensation tax returns. The amounts allowed *324 by respondent were $24,078.61 for 1942 and $35,150.10 for 1943. Respondent increased this latter figure by the amount of $854.07, which represented a payment petitioner was required to pay by the Wages and Hours Division of the Department of Labor. The petitioner has failed to sustain his burden of proving the "labor-sawmill" expenses to be greater than those allowed by respondent with one exception. The Georgia unemployment compensation tax returns indicate that such wages amounted to $24,566.31 for 1942 and $35,362.95 for 1943; and, since respondent used these returns as a basis for determining the proper deductions, we have found as a fact that the proper expenses for "labor-sawmill" for the years 1942 and 1943 are $24,566.31 and $36,217.02, respectively. The next question to be considered is whether petitioner is subject to the 50 per cent fraud penalty for the taxable years. Petitioner maintained that he had practically no records for his business, and that the errors which he made in understating sales and overstating purchases were due to his lack of records, and not due to an intent to evade tax. In 1942, he reported a net taxable income of $1,847.46, and in 1943 a net taxable *325 income of $583.84. Respondent, in his notice of deficiency, determined that petitioner had net income for the years 1942 and 1943 in the amounts of $20,238.79 and $9,361.33, respectively, or an increase of over 1,000 per cent for 1942 and approximately 1,500 per cent for 1943. Evidence of a gross understatement of taxable income, while not in and of itself evidence of fraud, is strong evidence of a fraudulent intent to evade tax. . Considering all the facts of record, respondent has borne his burden of proving that the 50 per cent fraud penalty should apply to the deficiencies for the years 1942 and 1943. Sections 294 (d) (1) (A) and 294 (d) (2) provide penalties for failure to make and file a declaration of estimated tax and for substantial under-estimate of the estimated tax, respectively. In section 294 (d) (1) (A) the penalty can be avoided upon a showing of reasonable cause to the Commissioner for the failure to file a declaration, but section 294 (d) (2) is mandatory in its imposition of the penalty. We can assume from respondent's imposition of the maximum penalty provided in section 294 (d) (1) (A) that no showing of reasonable *326 cause for his failure to file was made by the petitioner. The evidence before us is equally silent as to any reasonable cause for petitioner's failure, and, accordingly, we approve respondent's determination as to these penalties. Decision will be entered under Rule 50.